STEPHEN KUNIAN, TRUSTEE IN BANKRUPTCY OF
A. MEROWITZ AND COMPANY, INC. *v.* DEVELOPMENT
CORPORATION OF AMERICA ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued June 7—decided July 11, 1973

*Richard F. Connors,* for the appellants-appellees (defendants).

*Frederic M. Klein,* with whom was *Milo J. Altschuler,* for the appellee-appellant (plaintiff).

MacDONALD, J. This appeal and cross appeal have been taken from a judgment rendered by a state referee exercising the powers of the Superior Court. The judgment awarded the plaintiff, Stephen Kunian, trustee in bankruptcy for A. Merowitz and Company, Inc., $32,164.94 plus interest as damages for breach of contract against the defendants Development Corporation of America and DCA Builders, Inc. The defendant DCA Builders, Inc., is a wholly-owned subsidiary of Development Corporation of America and Development Corporation of America acted as the agent of DCA Builders, Inc., in the construction of the Church Street South project in the city of New Haven, Connecticut, for which project the plaintiff had contracted to

furnish plumbing and heating materials. The defendant DCA Builders, Inc., stipulated that whatever judgment might be rendered against the defendant Development Corporation of America should also be rendered against DCA Builders, Inc.

The finding[1] discloses the following facts: On March 18, 1969, and prior thereto, A. Merowitz and Company, Inc., hereinafter referred to as the plaintiff, was doing business as a supplier of plumbing and heating materials. On March 18, 1969, the plaintiff entered into a written contract with Development Corporation of America, herein called the defendant, whereby the plaintiff was to deliver to the defendant the plumbing and heating materials necessary for the construction of an F.H.A. low-income housing project, known as Church Street South in New Haven, Connecticut, all in accordance with plans and specifications prepared for the project. Under the contract, the defendant agreed to pay $358,381 plus the Connecticut sales tax for the materials. The terms of payment, set forth in the contract, established time provisions for payment whereby the defendant was to pay, on the 25th day

---

[1] The defendants assigned as error the finding of the court without evidence that "the defendant knew from the very beginning that the deliveries were invoiced, not at the prices listed on the papers attached to the contract, but in accordance with the custom of the trade." It is questionable whether this assignment actually was pursued in the defendants' brief and should be treated as abandoned under such cases as *Gutowski* v. *New Britain,* 165 Conn. 50, 55–56, 327 A.2d 552, and *Gentile* v. *Ives,* 159 Conn. 443, 444, 270 A.2d 680, but even viewing the claim as having been covered by some of the general arguments advanced in the brief we find that it has no merit. Findings of fact are tested by the evidence printed in the appendices to the briefs and here there is sufficient evidence printed in the appendix to the plaintiff's brief to support this finding. Practice Book § 718; *Consiglio* v. *Warden,* 160 Conn. 151, 158, 276 A.2d 773.

of the month, the price set forth on invoices showing delivery of materials between the 1st and the 15th days of the month, and was to pay, on the 10th day of the succeeding month, the price set forth on invoices showing delivery of materials between the 15th and 30th days of the month. The defendant was permitted to take a 2 percent discount if payment was made pursuant to the contract. Under the contract, deliveries were to be made to the job site when ordered and as ordered by the defendant.

Incorporated in the contract was the following typewritten provision: "The attached list by A. Merowitz Co. is a guaranteed complete list of plumbing and heating materials as per plans and specifications dated 9 October 1968 for the Church Street South project in New Haven." To the contract were attached seven sheets of paper, on which the plaintiff had listed under the printed headings of "Quantity" and "Descriptions" the number and type of each item of plumbing and heating material which the plaintiff figured was required to complete the building. Also on each of the seven sheets were columns of monetary figures, headed by the printed words "List," "total," "discount" and "net." These columns of figures were made by the plaintiff to determine its proposed quotation for the necessary plumbing and heating material required to complete the building.

The plaintiff commenced to make delivery to the job site after the contract was executed and in such quantities and at such times as the defendant's supervisor ordered and submitted to the defendant, on a periodic basis, invoices of all deliveries. These deliveries were not invoiced at the prices referred to above but were invoiced at the same price that the

plaintiff had paid for the materials, plus a broker's fee of 5 percent. This method of invoicing deliveries was in accordance with the custom of the trade.

The list attached to the contract was not, in fact, a complete list of plumbing and heating materials necessary for the job, for in a job of the magnitude involved here a complete list is a virtual impossibility. Furthermore, many of the items ordered by the defendant and delivered by the plaintiff were not on the attached list but were substitutions, approved by the architect, for items which were on the attached list. All of the deliveries made by the plaintiff, however, were ordered by the defendant's supervisor and the defendant knew from the very beginning that the deliveries were invoiced, not at the prices listed on the papers attached to the contract, but in accordance with the custom of the trade.

From shortly after March 18, 1969, until October 31, 1969, the defendant accepted all deliveries and paid to the plaintiff all charges set forth in the invoices except the sum of $7502.75, although the materials supporting that sum had been previously ordered by, delivered to and accepted by the defendant. In spite of this unpaid balance of $7502.75, the plaintiff continued to make deliveries after October 31, 1969, as ordered by the defendant's supervisor. By November 26, 1969, the defendant's indebtedness for materials delivered and accepted, as shown on the invoices, had risen to approximately $38,000. On December 12, 1969, the plaintiff, at a conference with the defendant, insisted on payment of the outstanding indebtedness of approximately $38,000 but actually received only $5000. At this conference, however, the defendant promised to make further pay-

ments during January, 1970, against the balance of the then existing indebtedness, provided that the plaintiff would continue to deliver materials to the job site, when and as ordered. Relying on this promise of the defendant, the plaintiff continued to deliver materials, as ordered, but the defendant made no further payment for such materials or in reduction of the indebtedness.

In early January, 1970, the defendant began to purchase plumbing and heating materials from Fairfield Plumbing Supply Company, for which the defendant paid $246,671.49. Then by letter of January 14, 1970, the defendant demanded that the plaintiff deliver the balance of the materials required under the contract, but the defendant did not pay or offer to pay what it already owed at that time, or to abide by its promise of December 12, 1969. The plaintiff replied by stating that it would deliver the balance of the required materials but, in view of the defendant's large indebtedness, it would do so only if payment of the entire contract was guaranteed by the defendant's depositing sufficient cash in escrow to pay for the delivered materials. When the defendant refused to provide such a guarantee or a similar one by January 27, 1970, the plaintiff ceased making deliveries.

The unpaid balance, as shown on the invoices as of January 27, 1970, was $51,000. The ordered materials, which had not been listed on the attached sheets or those referred to as substitutions, were delivered by the plaintiff and invoiced at $31,107.34. This figure represented what the plaintiff had paid for them, plus a broker's fee of 5 percent, plus the Connecticut sales tax. If, when preparing the invoices, the plaintiff had used the prices listed on the

sheets attached to the contract, the total of the invoices would have been $18,836.06 less in amount. This result would have occurred because the plaintiff invoiced the defendant $28,667.90 above the listed prices and $9831.84 below such listed prices. The prices charged by the plaintiff for all of the delivered materials, however, were reasonable. The defendant has paid to the plaintiff a total of $149,350 against a total invoiced charge of approximately $200,000. The plaintiff brought this action by writ dated February 3, 1970, and subsequently the plaintiff was adjudicated bankrupt. On July 8, 1970, Stephen Kunian was appointed its trustee in bankruptcy and during November, 1970, was substituted as the party plaintiff.

The defendants in their appeal have assigned as error the following conclusions of the court: (1) that the defendant breached the contract, (2) that the plaintiff did not breach the contract, (3) that the plaintiff's failure to invoice at the prices listed on the sheets attached to the contract was waived by the defendant, and in addition that this conclusion was in error because the issue of waiver was not raised in the pleadings as a special defense nor was it raised by the plaintiff during the course of the trial, (4) that as a result of the defendant's breach, the plaintiff is entitled to recover damages in accordance with the prices on the attached list for materials which were on the list and he is entitled to recover the reasonable value of the materials which were ordered and accepted by the defendant, but which were not on the list, and (5) that the defendant is indebted to the plaintiff, as damages for its breach of contract, in the amount of $32,164.94 with interest from February 3, 1970.

The plaintiff in his cross appeal has assigned error essentially to two conclusions of the court: (1) that the plaintiff is entitled to recover damages in accordance with the prices on the attached list for materials which were on that list and (2) that the amount of damages to which the plaintiff is entitled is $32,164.94 plus interest, when the conclusions reached by the court support a judgment for the plaintiff in the amount of $51,000 plus interest, the latter sum being the reasonable value of the materials delivered to the job site and not paid for. In addition, the plaintiff has assigned as error the overruling of two of its claims of law: (1) that since the defendant breached the contract, the measure of damages no longer is the contract price but is the reasonable value of all materials delivered and accepted by the defendant, and (2) that if the plaintiff's damages are to be governed by the contract price, the contract price is the total amount of $358,381 plus sales tax, divisible only on the basis of the materials ordered, delivered and accepted at the invoiced price, being an unpaid balance of $51,000.

I

We deal first with the issues raised by the defendants' assignments of error but in so doing we necessarily will discuss the issues presented by the plaintiff's assignments. As previously stated, this case deals with a contract to deliver plumbing and heating supplies which was executed on March 18, 1969. The Uniform Commercial Code—Sales, § 42a-2-101 to § 42a-2-725 of the General Statutes, became effective on October 1, 1961, and applies to "transactions in goods." § 42a-2-102. " 'Goods' means all things . . . which are movable at the time of identification

to the contract for sale . . . ." § 42a-2-105. Since plumbing and heating supplies are movable goods, the contract in question clearly is governed by the Uniform Commercial Code.

The basic question for determination on this appeal is whether the defendant's failure to pay an indebtedness for several deliveries of plumbing and heating supplies was a breach of contract. To decide this question we obviously must first look at the contract. Using its own purchase order form,[2] the Development Corporation of America ordered from A. Merowitz and Company "plumbing and heating materials as per plans and specifications dated 9 October 1968 for the Church Street South project in New Haven, Connecticut." Attached to the purchase order was a list of plumbing and heating materials which the order said was a "guaranteed complete list." The purchase order was signed by a representative of the defendant and was accepted by a representative of the plaintiff. Under the heading "terms" on the purchase order was the following: "Invoices 1st to 15th payable on 25th of month," "Invoices 15th to 30th payable on 10th of month" and "2% cash disct. allowed if paid within terms." The defendant argues, assuming the amount of the indebtedness was correct, that as a consequence of these contract provisions if it did not pay invoices on the 10th and the 25th of the month it would lose the discount but it still would have a contract right to demand the completion of all deliveries before its obligation to pay the full price arose.

"An instalment contract is one in which the agreed performance of at least one of the parties is to be

---

[2] We must observe that the parties invited litigation when they reduced a contract worth $358,381 to a one-page purchase order.

rendered, not as a whole at one time and place, but piecemeal at different times or different places." 3A Corbin, Contracts § 687, p. 245 (1960). Since the contract required delivery of plumbing and heating material piecemeal, it is obviously an installment contract. Section 42a-2-307 expressly provides that "[u]nless otherwise agreed all goods called for by a contract for sale must be tendered in a single delivery and payment is due only on such tender but where the circumstances give either party the right to make or demand delivery in lots the price if it can be apportioned may be demanded for each lot." Here the parties agreed that deliveries would be made as required, so "[u]nless otherwise agreed," since the "circumstances . . . [gave one] party the right to . . . demand delivery in lots," "the price if it can be apportioned may be demanded for each lot." The parties, however, agreed on terms for payment and as a result this contract is taken out of § 42a-2-307. The question then is whether the parties intended by the terms of payment to require payment on the specified dates.

"The fact that a contract calls for performance in instalments does not necessarily make it a divisible contract. Whether such a contract is divisible or entire generally depends upon the intention of the parties ascertained by a construction of the contract." 17 Am. Jur. 2d, Contracts, § 328; *New Era Homes Corporation* v. *Forster,* 299 N.Y. 303, 86 N.E.2d 757. "A contract is divisible where by its terms, 1, performance of each party is divided into two or more parts, and, 2, the number of parts due from each party is the same, and, 3, the performance of each part by one party is the agreed exchange for a corresponding part by the other party." Restate-

ment, 1 Contracts § 266, p. 385; *Hartford-Connecticut Trust Co.* v. *Cambell,* 95 Conn. 399, 405, 111 A. 864.

"We construe a contract in accordance with what we conclude to be the understanding and intention of the parties as determined from the language used by them 'interpreted in the light of the situation of the parties and the circumstances connected with the transaction.'" *Blatt* v. *Star Paper Co.,* 160 Conn. 193, 202, 276 A.2d 786. "[I]f the terms of an instrument are fairly susceptible of two or more interpretations, the one which is the more equitable, reasonable and rational is to be preferred." *Texaco, Inc.* v. *Rogow,* 150 Conn. 401, 408, 190 A.2d 48.

As a matter of construction we cannot believe that the parties intended that if the defendant did not pay for the installments as the contract prescribed, it merely would lose the discount and would be required to pay only after all deliveries had been made. "The transaction was a credit transaction; but it was so only to the specified extent. Generally, the seller ought not to be required to risk more than the agreed amount of his goods on the mere promise of the buyer." 3A Corbin, op. cit. § 690, pp. 254–55. "In some applications, particularly in banking transactions, the word discount is used in the sense of prepayment of interest, but it is also widely used in the sense of a rebate or allowance for punctual payment, particularly in the case of sales on open account and utility services." *Tatelbaum* v. *Chertkof,* 212 Md. 475, 480, 129 A.2d 680. "Discount is an abatement from the face of the account, and the remainder is the actual purchase price of the goods charged in the account." *Napier* v. *John V. Farwell Co.,* 60 Colo. 319, 324, 153 P. 694. Here the discount was

provided if the terms of payment were met. The discount was intended as an incentive for prompt payment and it is not inconsistent with this purpose that the parties also intended that the payments were due on the dates set out in the contract and that failure to pay on these dates would constitute a breach of contract. Absent the clearest language to the contrary, we cannot construe the contract to mean that the defendant was obligated to pay the full price only when all deliveries had been made. This contract was divisible because the performance of each party clearly was divided into parts and the performance of the plaintiff was the agreed exchange for the performance of the defendant on the 10th and the 25th of each month. See Restatement, 1 Contracts § 266, Illust. 2, p. 385. Since an action lies at once for an installment due; *House Cold Tire Setter Co.* v. *Ingraham,* 83 Conn. 31, 33, 75 A. 80, *State* v. *Kisselburg,* 27 Ariz. 336, 233 P. 580, *Behnke* v. *Rathsam,* 251 S.W. 391 (Mo. App.), *Klein* v. *Zeeve,* 199 Wash. 644, 92 P.2d 877; the plaintiff had a legal right to bring this action for the overdue payments.

"If the contract provides that payment for an instalment shall be made at a stated time after delivery has been made, of course delivery is a condition precedent to payment. But what is the effect of the buyer's failure to pay for an instalment that has been delivered upon the seller's duty to make delivery of a later instalment? Generally, but not quite always, the seller will be privileged to suspend the succeeding delivery until the previous instalment has been paid for." 3A Corbin, Contracts § 690, p. 254; *Williams* v. *Perrotta,* 95 Conn. 529, 533, 111 A. 843.

Prior rules of law permitting the seller to suspend future deliveries where the buyer is in default of an installment payment have been changed by the Uniform Commercial Code. "Whenever nonconformity or default with respect to one or more instalments substantially impairs the value of the whole contract there is a breach of the whole. But the aggrieved party reinstates the contract if he . . . brings an action with respect only to past instalments or demands performance as to future instalments." § 42a-2-612 (3). Here, by a complaint dated February 3, 1970, the plaintiff alleged that the defendant had failed to make payments for past deliveries made pursuant to the contract and claimed damages for the sum due. The defendant claims that in commencing this action with respect only to past installments the plaintiff reinstated the contract. Thus, the defendant argues that the plaintiff should have continued making deliveries and its failure to do so after January 27, 1970, was a breach of contract. It is undisputed, however, that at the December 12, 1969, meeting between the parties the plaintiff demanded adequate assurance that the defendant would pay its outstanding indebtedness before the plaintiff would continue making deliveries. Under the circumstances, this was equivalent to a written demand for adequate assurance. It is further undisputed that the defendant failed to abide by its promise made at the conference to pay its outstanding indebtedness or even to pay for the subsequent deliveries which it thus had induced the plaintiff to make. The plaintiff then had "reasonable grounds for insecurity" and justifiably informed the defendant that it would deliver the balance of the material only if payment of the entire contract was guaranteed by the defendant's depositing sufficient cash in

escrow to pay for the delivered materials. The defendant's failure, therefore, to provide adequate assurance of due performance within a reasonable time after the request and after the action had been brought was a repudiation of the contract and the plaintiff was excused from further performance under the contract. § 42a-2-609 (1), (4).

## II

The defendant next contends that the plaintiff expressly guaranteed that the list of plumbing and heating materials attached to the contract was a complete list of the materials needed for the project and their list prices. As a consequence, the defendant argues, the court was in error in awarding the reasonable value of the materials that were not on the list but were needed by the defendant for the project because there could be no recovery for goods not on the list. Had the contract been completed by both parties, the defendant contends, the plaintiff would not have been entitled to extra payment for goods delivered which were not on the list attached to the contract and should not be permitted to reap a windfall.

The purchase order accepted by the plaintiff, which constituted the contract between the parties, contained the following language: "The attached list by A. Merowitz Co. is a guaranteed complete list of plumbing and heating materials as per plans and specifications dated 9 October 1968 for the Church Street South project in New Haven, Connecticut with the following exceptions only: Deletions: 400 Disposalls—Additions: Roof flanges per plans and specifications. The total price for this material is $358,381.00, Plus Sales Tax." The court

found that the list attached to the contract was not, in fact, a complete list of plumbing and heating materials necessary for the job and that in a job of this magnitude "a complete list is a virtual impossibility." The court further found that many items ordered by the defendant and delivered by the plaintiff were not on the attached list but were "substitutions," approved by the architect, for items which were on the list.

From the foregoing we cannot hold that the plaintiff guaranteed that if materials were needed which were not on the list they would be provided without expense. We construe the contract to mean that the plaintiff guaranteed to supply all the heating and plumbing materials for the Church Street South project, as required by the plans and specifications, for the contract price of $358,381 plus sales tax, and that the list prices for the items on the attached list would be the contract price for those items and not that if substitutions were made for items on the list, no price could be charged. Had the parties so intended we believe they would have been more explicit especially in view of the fact that the terms were included on the defendant's purchase order and contracts are construed against the party which drew them. *Vachon* v. *Tomascak,* 155 Conn. 52, 58–59 (dis.), 230 A.2d 5; *Beach* v. *Beach,* 141 Conn. 583, 593, 107 A.2d 629. The court, therefore, did not err in awarding the reasonable value of the materials which were not on the list.

## III

The defendant's final argument is that the court erred in concluding that the plaintiff's failure to invoice materials at the prices listed in the contract

was waived by the defendant because the issue of waiver was not raised in the pleading nor at the trial. Whether the defendant waived the plaintiff's failure to invoice at the correct prices, however, is of little importance in the determination of this appeal. "The defendant might have tendered payment of the amount due; [but] he could not prevent collection of what was due merely because the price charged varied from the price contracted for. Differences of that sort will be adjusted in the recovery; they in no way involve the issue of performance." *Bridgeport Hardware Mfg. Corporation* v. *Bouniol*, 89 Conn. 254, 259, 93 A. 674. The fact that the plaintiff was not invoicing at the prices on which the parties had agreed did not excuse the defendant from tendering the proper payments pursuant to the time provisions in the contract. § 42a-2-607 (1).

## IV

The last issue presented for our consideration is the plaintiff's contention that as a result of the defendant's breach of contract the measure of damages is the reasonable value of the materials on the list and not their contract price. In making this claim, however, the plaintiff ignores the fact that its complaint of February 3, 1970, stated an action on the contract and that as a result the measure of damages is the contract price. *House Cold Tire Setter Co.* v. *Ingraham*, 83 Conn. 31, 33, 75 A. 80; *Leonard* v. *Dyer*, 26 Conn. 172, 178. "When the plaintiff has fully performed [as to certain installments of a divisible contract], it would be anomalous not to award him the agreed price. The Uniform Commercial Code labels a lawsuit seeking this kind of recovery an 'action for the price.'" Calamari & Perillo, Contracts § 202, p. 325. "When the buyer

fails to pay the price as it becomes due the seller may recover, together with any incidental damages under section 42a-2-710, the price . . . of goods accepted . . . ." § 42a-2-709 (1).

There is no error.

In this opinion the other judges concurred.