CHERWELL-RALLI, INC. *v.* RYTMAN GRAIN COMPANY, INC.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued April 1—decision released May 20, 1980

*Jackson T. King, Jr.,* with whom, on the brief, was *Allyn L. Brown, Jr.,* for the appellant (defendant).

*James D. Reardon,* for the appellee (plaintiff).

PETERS, J.   This case involves a dispute about which of the parties to an oral instalment contract was the first to be in breach.   The plaintiff, Cherwell-Ralli, Inc., sued the defendant, Rytman Grain Co., Inc., for the nonpayment of moneys due and owing for accepted deliveries of products known as Cherco Meal and C-R-T Meal.   The defendant, conceding its indebtedness, counter-claimed for damages arising out of the plaintiff's refusal to deliver remaining instalments under the contract.   The trial court, *Bordon, J.,* trial referee, having found all issues for the plaintiff, rendered judgment accordingly, and the defendant appealed.

The trial court's unchallenged finding of fact establishes the following:   The parties, on July 26, 1974, entered into an instalment contract for the sale of Cherco Meal and C-R-T Meal on the basis of a memorandum executed by the Getkin Brokerage House.   As modified, the contract called for shipments according to weekly instructions from the buyer, with payments to be made within ten days after delivery.   Almost immediately the buyer was behind in its payments, and these arrearages were often quite substantial.   The seller repeatedly called these arrearages to the buyer's attention but continued to make all shipments as requested by the buyer from July 29, 1974, to April 23, 1975.

By April 15, 1975, the buyer had become concerned that the seller might not complete performance of the contract, because the seller's plant might

close and because the market price of the goods had come significantly to exceed the contract price. In a telephonic conversation between the buyer's president and the seller's president on that day, the buyer was assured by the seller that deliveries would continue if the buyer would make the payments for which it was obligated. Thereupon, the buyer sent the seller a check in the amount of $9825.60 to cover shipments through March 31, 1975.

Several days later, on April 23, 1975, the buyer stopped payment on this check because he was told by a truck driver, not employed by the seller, that this shipment would be his last load. The trial court found that this was not a valid reason for stoppage of payment. Upon inquiry by the seller, the buyer restated his earlier concerns about future deliveries. Two letters, both dated April 28, 1975, describe the impasse between the parties: the seller again demanded payment, and the buyer, for the first time in writing, demanded adequate assurance of further deliveries. The buyer's demand for assurance was reiterated in its direct reply to the seller's demand for payment. The buyer, however, made no further payments, either to replace the stopped check or otherwise to pay for the nineteen accepted shipments for which balances were outstanding. The seller made no further deliveries after April 23, 1975, when it heard about the stopped check; the buyer never made specific requests for shipments after that date. Inability to deliver the goods forced the seller to close its plant, on May 2, 1975, because of stockpiling of excess material.

The trial court concluded, on the basis of these facts, that the party in breach was the buyer and not the seller. The court concluded that the seller

was entitled to recover the final balance of $21,013.60, which both parties agreed to be due and owing. It concluded that the buyer could not prevail on its counterclaim because it had no reasonable grounds to doubt performance from the seller and had in fact received reasonable assurances. Further, the buyer had presented no reasonably accurate evidence to establish the damages it might have sustained because of the seller's failure to deliver.

The buyer on this appeal challenges first the conclusion that the buyer's failure to pay "substantially impaired the value of the whole contract" so as to constitute "a breach of the whole contract," as is required by the applicable law governing instalment contracts. General Statutes § 42a-2-612 (3).[1] What constitutes impairment of the value of the whole contract is a question of fact. *Graulich Caterer, Inc.* v. *Holterbosch, Inc.,* 101 N.J. Super. 61, 75, 243 A.2d 253 (1968); *Holiday Mfg. Co.* v. *B.A.S.F. Systems, Inc.,* 380 F. Sup. 1096, 1102 (D. Neb. 1974). The record below amply sustains the trial court's conclusion in this regard, particularly in light of the undenied and uncured stoppage of a check given to comply with the buyer's promise to reduce significantly the amount of its outstanding arrearages. See *Frigiking, Inc.* v. *Century Tire & Sales Co.,* 452 F. Sup. 935, 933 (N.D. Tex. 1978).

---

[1] General Statutes § 42a-2-612 (3) provides: "Whenever nonconformity or default . . . impairs the value of the whole contract there is a breach of the whole. But the aggrieved party reinstates the contract if he accepts a nonconforming instalment without seasonably notifying of cancellation or if he brings an action with respect only to past instalments or demands performance as to future instalments."

The buyer argues that the seller in an instalment contract may never terminate a contract, despite repeated default in payment by the buyer, without first invoking the insecurity methodology of General Statutes § 42a-2-609.[2] That is not the law. If there is reasonable doubt about whether the buyer's default is substantial, the seller may be well advised to temporize by suspending further performance until it can ascertain whether the buyer is able to offer adequate assurance of future payments. *Kunian* v. *Development Corporation of America,* 165 Conn. 300, 312, 334 A.2d 427 (1973); *Dangerfield* v. *Markel,* 252 N.W.2d 184, 192–93 (N.D. 1977). But if the buyer's conduct is sufficiently egregious, such conduct will, in and of itself, constitute substantial impairment of the value of the whole contract and a present breach of the contract as a whole. An aggrieved seller is expressly permitted, by General Statutes § 42a-2-703 (f),[3] upon breach of a contract

---

[2] General Statutes § 42a-2-609 provides: "RIGHT TO ADEQUATE ASSURANCE OF PERFORMANCE. (1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.

"(2) Between merchants the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards.

"(3) Acceptance of any improper delivery or payment does not prejudice the aggrieved party's right to demand adequate assurance of future performance.

"(4) After receipt of a justified demand failure to provide within a reasonable time not exceeding thirty days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract."

[3] General Statutes § 42a-2-703 provides: "SELLER'S REMEDIES IN GENERAL. Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or

as a whole, to cancel the remainder of the contract "with respect to the whole undelivered balance." See *Frigiking, Inc.* v. *Century Tire & Sales Co.*, supra. Nor is the seller's remedy to cancel waived, as the buyer argues, by a law suit seeking recovery for payments due. While § 42a-2-612 (3) states that a contract is reinstated if the seller "brings an action with respect *only* to past instalments" (emphasis added), it is clear in this case that the seller intended, as the buyer well knew, to bring this contract to an end because of the buyer's breach.

The buyer's attack on the court's conclusions with respect to its counterclaim is equally unavailing. The buyer's principal argument is that the seller was obligated, on pain of default, to provide assurance of its further performance. The right to such assurance is premised on reasonable grounds for insecurity. Whether a buyer has reasonable grounds to be insecure is a question of fact. *AMF, Inc.* v. *McDonald's Corporation,* 536 F.2d 1167, 1170 (7th Cir. 1976). The trial court concluded that in this case the buyer's insecurity was not reasonable and we agree. A party to a sales contract may not suspend performance of its own for which it has "already received the agreed return." At all times, the buyer had received all of the goods which it had

repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract as provided in section 42a-2-612, then also with respect to the whole undelivered balance, the aggrieved seller may (a) withhold delivery of such goods; (b) stop delivery by any bailee as provided in section 42a-2-705; (c) proceed under the next section respecting goods still unidentified to the contract; (d) resell and recover damages as hereafter provided in section 42a-2-706; (e) recover damages for nonacceptance as provided in section 42a-2-708 or in a proper case the price as provided in section 42a-2-709; (f) cancel."

ordered. The buyer could not rely on its own non-payments as a basis for its own insecurity. The presidents of the parties had exchanged adequate verbal assurances only eight days before the buyer itself again delayed its own performance on the basis of information that was facially unreliable. Contrary to the buyer's argument, subsequent events proved the buyer's fears to be incorrect, since the seller's plant closed due to a surplus rather than due to a shortage of materials. Finally, it is fatal to the buyer's appeal that neither its oral argument nor its brief addressed its failure to substantiate, with probative evidence, the damages it alleged to be attributable to the seller's nondeliveries.

There is no error.

In this opinion the other judges concurred.