UNIVERSAL BUILDERS CORPORATION *v.* UNITED
METHODIST CONVALESCENT HOMES OF
CONNECTICUT, INC., ET AL.
(3963)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued March 12—decision released May 6, 1986

*Joseph Glass,* for the appellant (plaintiff).

*John E. Lee,* for the appellee (defendant J. H. Hogan, Inc.).

SPALLONE, J. This case arises out of the sale of building materials and supplies. The plaintiff seller, Universal Builders Corporation (Universal), contracted with the defendant, J. H. Hogan, Inc. (Hogan), to supply roof trusses and gables to Hogan for the construction of several buildings on property allegedly owned by the named defendant, United Methodist Convalescent Homes, Inc. (United Methodist). The plaintiff's original complaint was brought against United Methodist to foreclose a mechanic's lien which the plaintiff had placed on the property involved. Hogan was added as a defendant while the foreclosure action was pending, and the plaintiff amended its complaint to allege, in a second count, that Hogan owed it $7024 for materials and supplies it delivered to Hogan. Subsequently, Hogan filed a bond with the plaintiff in substitution for the mechanic's lien, and the plaintiff amended the first count of its complaint to reflect this fact.

Hogan counterclaimed alleging that the plaintiff had breached the contract in that it failed to deliver all the supplies in a reasonable time with the result that Hogan had to purchase substitute supplies elsewhere at a price $16,779 in excess of the contract price. Universal filed several special defenses to Hogan's counterclaim, alleging unconscionability, impossibility and rescission, and also alleging that Hogan had canceled the parties' agreement.

The trial court concluded that no pleadings or evidence were submitted with regard to the first count

and found the issues on that count in favor of United Methodist.[1] The court found the issues in favor of the seller, Universal, on the second count of Universal's complaint in the amount of $7024, and in favor of the buyer, Hogan, on Hogan's counterclaim in the amount of $16,779, having concluded that the plaintiff failed to prove its special defenses to the counterclaim. It, therefore, rendered a judgment in favor of Hogan for $9755 plus interest.

The plaintiff has appealed and claims essentially[2] that (1) the legal bases employed by the trial court in awarding damages to the defendant were erroneous, (2) the defendant's demand for the delivery of materials to be supplied by the plaintiff was unconscionable and thereby terminated the parties' agreement, and (3) the trial court erred in concluding that no pleadings or evidence were submitted in regard to the first count of the complaint, and therefore erred in not considering the allegations contained in that count.

The plaintiff's first claim of error challenges generally the legal bases for awarding damages to the defendant. There exists no dispute as to the fact that the parties contracted to supply and to purchase a number of roof trusses and gables. The parties' agreement called for the "fabrication and delivery [of such materials] as required by [Hogan's] project superintendent. . . . " The testimony of Universal's secretary-treasurer was that orders for materials pursuant to the parties' agreement were to be phoned into Universal as they were required. Hogan placed its ini-

---

[1] Although the trial court's memorandum of decision states this result, the judgment file does not contain a judgment regarding the first count of the complaint.

[2] The plaintiff's preliminary statement of issues sets out eight claims of error. Its brief does not, however, contain a statement of the issues as required by Practice Book § 3060F (d) (2). The issues discussed are therefore those which can reasonably be discerned from the arguments espoused by the plaintiff at oral argument and in its brief.

tial order for fifty-eight trusses in late February, 1983. The trusses were ultimately delivered in the middle of March, 1983, and were paid for by Hogan at that time. Hogan placed a second order for 102 trusses during the second week of April, 1983. Delivery of those trusses was received by Hogan during the last week of May, 1983. Universal claims that no additional orders were placed. Hogan claims, however, that its project superintendent, as well as other employees, made numerous telephone calls to Universal to stress Hogan's need for a continuous supply of materials. Joseph Wolfer, Hogan's project superintendent on the United Methodist project, testified that while Hogan received the delivery of 102 trusses at the end of May, 1983, this amount was only one-half of their requirements at that point. Wolfer testified that Hogan required 100 additional trusses by the middle of June, 1983, and that he telephoned Universal several times during this period in order to express his dissatisfaction regarding the slowness of deliveries. John Wolanik, Universal's plant superintendent, testified to receiving telephone calls from Hogan personnel during this period, and that the subject of those calls concerned schedule coordination problems between Hogan and Universal.

Having experienced these scheduling and delivery difficulties, and being in need of materials, Hogan, at one point in May, 1983, sought quotes for and obtained trusses from another supplier.[3] The additional trusses were, at this time, sought in an effort to restore a measure of continuity to the United Methodist project which had become severely backed-up. On June 28, 1983, Frank P. Gillon, Hogan's president, sent Universal a letter which expressed Hogan's frustration over

---

[3] This action by Hogan did not interfere with the parties' agreement in that Hogan's requirements for trusses on the United Methodist project exceeded the number of such materials to be supplied by Universal.

Universal's course of performance. The body of the letter stated in its entirety: "For the past seven weeks, we have attempted to have your firm deliver wood trusses under our order numbered 1805.6.2. Your continued excuses and delays have severely handicapped us in expediting this project. Unless a minimum of 200 trusses are delivered by July 5, 1983, you may consider your order cancelled."

Universal contends that the effect of this letter was to terminate the purchase order. Hogan contends that the letter was intended to obtain Universal's undivided attention and to identify the specific needs and problems of Hogan. Gillon testified that he did not intend to waive any damage claims to which Hogan was ultimately entitled. Upon receipt of Hogan's letter, Universal deemed the order canceled. Universal considered it impossible for it to manufacture 200 trusses within the time specified. Thereafter, having received no further deliveries from Universal, Hogan purchased its remaining material requirements for the United Methodist project from other suppliers.

Under the Uniform Commercial Code, "[w]hen reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance . . . . " General Statutes § 42a-2-609 (1). As "[b]etween merchants the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards." General Statutes § 42a-2-609 (2). See, e.g., *Kunian* v. *Development Corporation of America,* 165 Conn. 300, 312–13, 334 A.2d 427 (1973). A party's failure to provide such assurance of adequate performance within a reasonable time is a "repudiation of the contract"; General Statutes § 42a-2-609 (4); after which the aggrieved party may resort to any remedy provided in the event of a breach. General Statutes § 42a-2-610.

Applying these provisions to the present action, we conclude that the letter Hogan sent to Universal demanding 200 trusses by a specific date expressed properly Hogan's insecurity with respect to Universal's performance, and that Hogan thereby availed itself of its right to seek adequate assurance of that performance pursuant to General Statutes § 42a-2-609. "The right to such assurance is premised on reasonable grounds for insecurity. Whether a buyer has reasonable grounds to be insecure is a question of fact. *AMF, Inc.* v. *McDonald's Corporation,* 536 F.2d 1167, 1170 (7th Cir. 1976)." *Cherwell-Ralli, Inc.* v. *Rytman Grain Co.,* 180 Conn. 714, 719, 433 A.2d 984 (1980). Here, the trial court noted that the parties involved were all experts, and that they knew the construction business and its attendant problems of transportation, strikes, weather conditions, inventory and scheduling. In particular, the trial court noted that Universal's overseer of operations was an expert and was, as a result, aware of the traditional construction progression within the industry and by the trades. The court concluded that in view of the foregoing, Hogan's letter requesting the delivery of a minimum of 200 trusses could not be classified as an unconscionable request.

Having concluded that Universal failed to deliver as requested, the trial court awarded Hogan $16,779 which represented the amount Hogan expended in excess of the contract price for materials in substitution for those which were originally to be supplied by Universal. We conclude that the measure of damages employed by the trial court was proper. Upon the repudiation of the agreement by Universal; see General Statutes § 42a-2-609 (4); Hogan was entitled to "resort to any remedy for breach as provided by . . . section 42a-2-711 [of the General Statutes] . . . ." General Statutes § 42a-2-610. Section 42a-2-711 provides in part that upon a seller's failure to make delivery as required

or upon his repudiation of the agreement, "the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid [may] (a) 'cover'. . . . " A buyer " 'cover[s]' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." General Statutes § 42a-2-712 (1). When a buyer chooses to cover he may recover from the seller the difference between his cost to cover and the contract price as well as any incidental and consequential damages. General Statutes § 42a-2-712 (2). Expenses saved in consequence of the seller's breach are subtracted from the buyer's recovery. Id.

The trial court concluded that Hogan proved by a fair preponderance of the evidence that the trusses it purchased in substitution for those which Universal was obligated to supply under the parties' agreement totaled $16,779 above the contract price. There was no evidence produced from which the court could conclude that Hogan's cover was made in bad faith or with unreasonable delay. To the contrary, the court concluded that Hogan obtained the substitute, albeit slightly different, materials promptly on the open market in order to break the bottleneck in the construction schedule, and to end Hogan's frustration with Universal. The record below amply supports these conclusions.

In deciding the plaintiff's first claim of error, we have thoroughly addressed the plaintiff's second claim of error, that the defendant's demand for the delivery of 200 trusses was unconscionable and thereby terminated the parties' agreement. The trial court concluded, and we agree, that in view of the parties' knowledge and understanding as experts in the construction industry, Hogan's demand, made after it had reasonable grounds for insecurity, could not be viewed as unconscionable.

Moreover, we conclude that Hogan's actions were warranted and were in pursuit of an adequate assurance of Universal's performance. Under such circumstances, Hogan's actions did not constitute either a termination or rescission of the parties' agreement.

The plaintiff's final claim is that the trial court erred in concluding that no pleadings or evidence were submitted in regard to the first count of the complaint relating to the plaintiff's mechanic's lien and the bond which was substituted for that lien by the defendant. This claim was admittedly pressed by the plaintiff so as to insure payment of its claim secured originally by the lien and subsequently by the bond. The trial court awarded damages to the plaintiff on the second count for the amount of that payment, which is fully reflected in the ultimate judgment in favor of Hogan in the amount of $9755.

Because we have concluded that the trial court did not err in its award of damages to the defendant on its counterclaim, and because the plaintiff has not been harmed by the failure of the court to act on the first count of the complaint, we consider this final claim of error to be moot, and therefore decline to consider it.

There is no error.

In this opinion the other judges concurred.