[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a contract dispute between the plaintiffs, Ronald J. Roessler and Sally Jo Roessler, and two window manufacturers, New England Glass Enclosures, Inc. (New England Glass) and Martel Glazing Systems, Inc. (Martel). The plaintiffs, as buyers, allege that the defendants, as vendors, breached a written agreement dated October 9, 1987, to provide seven custom skylights for a home the Roesslers were renovating. The plaintiffs entered into a contract with Martel to construct and deliver the skylights for approximately $13,000. The Roesslers claim that Martel went out of business without any notification to them, and that they had already paid this defendant about $6,525, representing a deposit of one half of the contract price. Mr. and Mrs. Roessler claim that after making this payment they were unable to contact Martel, and that the apparent disappearance of Martel and their inability to determine the progress of performance on the contract constituted an anticipatory repudiation of the contract. In addition to their claim against Martel, the plaintiffs sued New England Glass on the theory "that New England Glass was liable for defendant Martel's anticipatory breach of contract because of its de facto merger with defendant Martel."
The contract specified that Martel would deliver the skylights six to eight weeks after plaintiffs approved the shop drawings, which approval occurred on January 16, 1988. According to the complaint, about two weeks after their approval of the drawings, the plaintiffs tried to contact defendant Martel to see how the work was progressing. No one answered the telephone. Plaintiffs continued to attempt to contact defendant Martel by telephone, contacting its landlord, and twice contacting the Stamford Police Department. They were unsuccessful. When they visited Martel's place of business in Stamford they found the premises vacant, and concluded that Martel had anticipatorily breached the contract. The plaintiffs then contracted with another manufacturer to supply the windows. On or about March 17, 1988, defendant New England Glass, which had taken over the contract from Martel, tendered delivery of the seven windows that CT Page 835 had been ordered. Plaintiffs refused to accept them and brought this suit for damages in two counts, breach of contract seeking a return of their down payment, and also for an alleged violation of General Statutes 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA). The claims against defendants included $17,500 monetary, compensatory, and punitive damages, plus reasonable attorney's fees and interest.
The defendants filed an answer generally denying the complaint, but agreeing that Martel on November 19, 1987 had received a $6,525 deposit from the plaintiffs, and also that Martel was dissolved as a corporation on March 30, 1990. Defendants asserted that they received notice of plaintiffs' approval of the shop drawings on January 19, 1988. The defendants also filed a counterclaim which alleged that in February, 1988, New England Glass and Martel had agreed that New England Glass would take over all of Martel's contracts, including the one with the Roesslers. The defendants contend that they manufactured the windows in question, notified the plaintiffs that they were about to be delivered, but that the plaintiffs breached the contract by refusing delivery and failing to pay the balance of the purchase price.
The plaintiffs filed special defenses to the counterclaim alleging that defendants breached the contract in February, 1988, when Martel "disappeared with plaintiffs' $6,525 deposit," which they describe as constituting an anticipatory breach of contract, and also that the contract had been "abandoned" by Martel.
The case was referred to Attorney Bernadette Coomaraswamy, an attorney trial referee, in accordance with General Statutes 52-434
(a) and Practice Book 428 et seq., who filed her report on June 22, 1992. She made a number of findings of facts, including: (1) the defendants, New England Glass and Martel, were corporations engaged in the business of manufacturing windows and skylights, but that the latter was dissolved on March 30, 1990; (2) the plaintiffs, by their agent and general contractor, D. Lantz, entered into a contract with Martel on October 9, 1987, for the construction of seven custom "pyramid" skylights, and plaintiffs paid Martel the sum of $6,524, which represented one half of the estimated contract price of $13,048; (3) the contract specified that the skylights would be delivered not later then eight weeks after plaintiffs' approval of the shop drawings, which were approved on January 16, 1988; (4) Martel was obliged to deliver the skylights between the 16th and 19th of March, CT Page 836 1988; (5) the defendants had informed the plaintiffs' general contractor and agent of unavoidable delays in the manufacture of the windows, and also that this agent knew in a general way of the progress of the work and the agreed upon delivery date; (6) Martel moved its manufacturing site from Stamford to New Milford for financial reasons; (7) plaintiffs tried to contact Martel by visiting their Stamford premises in early February, 1988, and could not find them, but made no effort to contact Martel by mail; (8) the defendants' premises in Stamford were used for manufacture only, not for display or retail, and customers did not customarily visit the work site; (9) at the request of the plaintiffs, the Stamford Police Department contacted Martel, who then telephoned the Roesslers to "reassure" them, but that the plaintiffs had already ordered new skylights from another supplier; (10) Martel tendered the skylights to the plaintiffs on March 17, 1988; (11) on March 14, 1988, three days before the skylights were tendered by Martel, plaintiffs obtained non-custom or standard skylights from another supplier; and (12) plaintiffs refused delivery of the skylights, claiming that by vacating their premises without notice, the defendants created in the plaintiffs a reasonable right to assume an anticipatory breach of contract.
The attorney trial referee drew the following conclusions from these facts: (1) Martel rendered full performance of its obligations under the contract by tendering the skylights to the plaintiffs on March 17, 1988, as the eight weeks specified in the contract commenced on January 19, 1988, when notice of approval of the shop drawings was received by the defendants; (2) no term of the contract specified or implied that time was "of the essence"; (3) the Roesslers' general contractor and agent had a responsibility to inform his principal of the progress of the work, the details of which he was aware, and his knowledge is imputed to his principal; (4) it is incumbent upon the insecure party to a contract to inform the other in writing of a complaint of anticipatory breach, which the plaintiffs did not do; General Statutes 42a-2-609; (5) had these plaintiffs sought assurance in writing, their letter would have been forwarded to Martel's address in New Milford and this action would have been unnecessary; (6) plaintiffs' repudiation of the contract and their ordering of substitute windows was a "tragic failure in judgment;" and (7) plaintiffs are liable to the defendants for the unpaid balance of the fully tendered performance by Martel. The attorney trial referee then recommended that judgment enter for the defendants on plaintiffs' complaint, and for the CT Page 837 defendants on their counterclaim in the amount of $9,296, representing $6,525 damages and $2,771 prejudgment interest. General Statutes 37-3a. Because of this recommendation, the referee did not discuss the plaintiffs' count claiming a violation of CUTPA.
In accordance with Practice Book 438, the plaintiffs moved to correct the attorney trial referee's report. They claimed that the findings of fact should be amended in a number of ways including that: (1) the contingent delivery date, according to the contract, was to be six to eight weeks after approval of the shop drawings, not receipt of approval by Martel; (2) eight weeks from January 16, 1988 was March 12, 1988, and even if the operative date upon which the eight weeks began to run was the date of receipt of notice of approval of the shop drawings, January 19, 1988, eight weeks would fall on March 15, 1988, not March 19, 1988; (3) defendants did not offer to deliver the skylights on March 17, 1988, but only during the week of March 20, 1988; (4) plaintiffs and their agent tried to reach Martel numerous times by telephone in February, 1988, and there was no answer; they visited the defendant Martel's Stamford site but found it abandoned; contacted Martel's landlord; and twice contacted the Stamford Police Department in mid-February and March, all in vain; (5) no evidence was submitted at trial to support the referee's finding that the replacement skylights were delivered on March 14, 1988; (6) no admissible evidence in the record supported the trial referee's conclusion that the defendants informed plaintiffs' agent of unavoidable delays, or that defendants ever gave plaintiffs or their agent a home telephone number; (7) plaintiffs need only have been reasonably justified in determining whether an anticipatory breach had occurred; General Statutes 42a-2-609; (8) an insecure party may, but need not, inform the other party in writing of the complaint of anticipatory breach to be accorded relief under 42a-2-609, 610; (9) it is pure speculation that a letter to the defendants would have arrived and/or solved the plaintiffs' dilemma; and (10) the recommended award should have reflected the fact that on June 23, 1989, New England Glass and/or Martel was able to sell one of the custom skylights included in the contract for $806.25, which amount should be credited to the Roesslers if judgment enters for the defendants.
The plaintiffs also asked that additional findings be made to the effect that: (1) Martel should have been considered a defunct corporation from February 4, 1988 onward, since it had vacated CT Page 838 its place of business by that date, and its assets had been repossessed by Angelo and Lillian Telesco, the principals of New England Glass, and parents of the principals of Martel; (2) upon repossession of Martel's assets by the principals of New England Glass, Martel purposefully did not notify its customers that its assets had been repossessed and that it was vacating its premises; and (3) plaintiffs' general contractor and agent informed plaintiffs in early February that he could not make contact with Martel.
The referee declined, however, to make any changes in her report and recommendations. Pursuant to Practice Book 439, the plaintiffs then filed exceptions to the report, asking this court to correct the report, and properly filed the transcript. The exceptions contended that the attorney trial referee erred in failing to make the corrections set forth in the plaintiffs' motion to correct.[1] Practice Book 440.
The transcript in this case had been reviewed and it is clear that there is ample support for the referee's factual findings. Among her key findings were that Martel did not receive notice of approval of the shop drawings until January 19, 1988;[2] that delivery of the skylights could have been made at least by March 19, 1988,[3] that the plaintiffs' general contractor and agent knew of the progress of the work;[4] that plaintiffs purchased the substitute windows prior to March 12, 1988;[5] and that the plaintiffs never attempted to contact the defendants in writing.[6]
Of course, there is some contrary evidence in the transcript, but it is axiomatic "that the fact finder determines with finality the credibility of witnesses and the weight to be given their testimony." Plikus v. Plikus, 26 Conn. App. 174, 177,599 A.2d 392 (1991).
The defendants also filed objections to the acceptance of the report, Practice Book 440, on the grounds that the conclusions of fact stated therein were not supported by the subordinate facts found, and that the referee erred in her rulings. Objections were specifically taken, among others, to the following conclusions: (1) that General Statutes 42a-2-609 rather than 42a-2-610
controlled plaintiffs' claim of anticipatory repudiation; and (2) that 42a-2-609 requires an insecure party to either demand assurances in writing or wait until after the performance date to declare a breach of contract. CT Page 839
This court's authority in reviewing an attorney trial referee's recommendations is a limited one. As our Supreme Court held in Dills v. Enfield, 210 Conn. 705, 714, 557 A.2d 517
(1989): (i) the trial court may not "retry the case"; (ii) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the (referee) has failed to find an admitted or undisputed fact, or had found a fact in such doubtful language that its real meaning does not appear"; and (in) a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716.
If the findings of fact by the referee are accepted, then this court's task, according to Bernard v. Gershman, 18 Conn. App. 652,656, 559 A.2d 1171 (1989), is to determine whether the conclusions of fact and law "are legally and logically correct and whether they find support in the facts found by the referee." Practice Book 440. The Appellate Court added that "[w]here evidence is in conflict, its probative force is for the trier of fact to determine." Id.
The parties do not dispute that this case is governed by the Uniform Commercial Code — Sales, General Statutes 42a-2-101 to42a-2-725, which applies to "transactions in goods," defined as "all things . . . which are movable at the time of identification to the contract for sale. . .;" 42a-2-105 (1); and that the skylights at issue fall with this definition.
General Statutes 42a-2-609 refers to an insecure party to a contract who has reasonable doubt about whether the other party is capable of carrying out his obligations under the contract.[7]
The section was discussed in Cherwell-Ralli, Inc. v. Rytman Grain Co. Inc., 180 Conn. 714, 717, 433 A.2d 984 (1980), in which the Chief Justice referred to "the insecurity methodology of General Statutes 42a-2-609," and stated that: "[t]he right to such assurance is premised on reasonable grounds for insecurity." Id., 719. In words pertinent to this case, the court held that: "[w]hether a buyer has reasonable grounds to be insecure is a question of fact." Id.
The Roesslers contend that General Statutes 42a-2-610
concerning anticipatory repudiation. and not 42a-2-609, governs this case.[8] The only "repudiation" that arguably occurred in this case resulted from Martel's failure to make assurances to CT Page 840 the plaintiffs as "insecure" parties under 42a-2-609. As stated in Universal Builders Corporation v. United Methodist Convalescent Homes of Connecticut. Inc., 7 Conn. App. 318, 322,508 A.2d 819 (1986), "[a] party's failure to provide such assurance of adequate performance within a reasonable time is a `repudiation of the contract'; General Statutes 42-2-609 (4); aher which the aggrieved party may resort to any remedy provided in the event of a breach. General Statutes 42a-2-610." I interpret this to mean that 42a-2-610 would come into play under the facts of this case only after there had been a repudiation under 42a-2-609.
According to Professor Farnsworth in his seminal text, Contracts, Second Edition (1990), 8-20, p. 656, an "anticipatory breach" is more precisely "an anticipatory repudiation." Once there has been such a repudiation, the injured party "is free to make such substitute arrangements as may be appropriate." Id. A "repudiation" is defined as a "manifestation by one party to the other that the first cannot or will not perform at least some of its obligations under the contract. For a repudiation to have legal effect, the threatened breach must be serious. According to the Restatement Second, it must be serious enough that the injured party could treat it as total if it occurred. A repudiation may be by words or other conduct. Usually a repudiation consists of a statement that the repudiating party cannot or will not perform." Id., 8-21, pp. 662-63. Professor Farnsworth goes on to say that: "[a] party may repudiate by conduct as well as by words. A promisor's voluntary affirmative act that renders the promisor actually or apparently unable to perform without a breach is a repudiation." Id., 665. In words pertinent to this case, it was stated that: "[s]ince the conduct must be an affirmative act, mere delay in performing is not a repudiation. . . Furthermore, courts have required that the act make the promisor's performance impossible, so that conduct that indicates mere unwillingness is not enough." Id., 665-66.
Professor Farnsworth also discusses UCC 2-609 in 8-23, p. 670: "[m]ere doubts by one party that the other will perform when performance is due will not excuse the first party from performing." Quoting "Ellen Peters" in the Cherwell-Ralli case, Farnsworth states that the Code empowers a party "to demand assurance that performance will be forthcoming, allowing it thereby to avoid the risk that it would otherwise run in acting on its belief." Echoing the Cherwell-Ralli decision, Farnsworth indicates: "[w]hether a party has `reasonable grounds for CT Page 841 insecurity' is a question of fact." Id., 673. In concluding his remarks on this section of the Code, Farnsworth remarks that although "UCC 2-609 has as yet generated relatively little litigation and its limits remain undefined, it seems unlikely that courts will sanction questionable demands for assurance and thereby encourage parties to harass each other." Id., 674.
Although the plaintiffs dispute the correctness of a number of the referee's findings of fact, I do not believe that any such claimed errors are crucial to the resolution of this case. This is because the plaintiffs do not contend that defendants repudiated this contract by words or in writing. The only claim therefore is that the repudiation was by "conduct." The claimed conduct was the abandonment of the manufacturing site, and the failure to so advise the plaintiffs, and also that the defendants failed to arrange for forwarding telephone calls. Even if one were to conclude that the defendants' conduct gave the plaintiffs "reasonable grounds for insecurity," this alone does not permit the plaintiffs to assume the contract has been repudiated by the vendors. They must do more under 42a-2-609 by demanding adequate assurance "in writing."
Moreover, even assuming the proper date for delivery was March 12, 1988, as contended by the plaintiffs, rather than March 19, as determined by the referee, the date does not appear crucial, since time was not stated to be of the essence in the contract. "The fact that a contract states a date for performance does not necessarily make time of the essence." Grenier v. Compratt Construction Company, 189 Conn. 144, 150, 454 A.2d 1289
(1983). "Where a time for performance is stated in an agreement, a party's tender of performance within a reasonable time thereafter will be considered substantial performance unless the parties intend that time for performance be of the essence." Miller v. Bourgoin, 28 Conn. App. 491, 498, 613 A.2d 292 (1992). Even if 42a-2-609 had been properly invoked by a demand for assurance in writing, the vendors would have had a "reasonable time not exceeding thirty days" to provide such assurance. The plaintiffs do not appear to dispute that, as the referee found, the defendants contacted the Roesslers on March 17, advised them the skylights were ready, and promised delivery at least within a few days. Thus, even if plaintiffs' exceptions to the report were sustained and they could be regarded as having had "reasonable grounds for insecurity," they would still be foreclosed from recovery because of their failure to comply with the writing requirement of 42a-2-609. CT Page 842
In conclusion, the referee's recommendation that the defendants should prevail follows logically and legally from her findings of fact, and accordingly is accepted. No material error in the referee's report has been found, or any other sufficient reason why it is unacceptable. Practice Book 443. In the words of Practice Book 440, the conclusions of fact "were properly reached on the basis of the subordinate facts found."
Judgment is entered in favor of the defendants on the complaint, and on their counterclaim. As to the amount of damages, the referee recommended that judgment enter in the amount of $9,296, consisting of the unpaid balance of the purchase price, $6,525, plus $2,771 statutory interest from the date of tender, March 17, 1988, to the date of judgment.
A vendor's remedies in the event of a repudiation by a buyer are set forth in General Statutes 42a-2-708 and 2-709, as well as in 42a-2-710, which provides for incidental damages. This case is remanded to the attorney trial referee for the limited purpose of conducting a hearing on the damage phase of this case, with specific reference to the above sections of the Code and any other pertinent provisions, including plaintiffs' claim for a credit of $806.25 received by the defendants on a sale of one of the windows.
So Ordered.
Dated at Stamford, Connecticut, this 7th day of January, 1993.
William B. Lewis, Judge