[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The court has for its consideration trial of an action brought by the plaintiff, Meriden Trust Safe Deposit Co., as executor of the estate of its decedent, Francis J. Young. The plaintiff sues to recover moneys owed to the decedent's estate by the defendant, H R Litho Sales Services, Inc. (HR).
I CT Page 11607
In February 1988 the decedent and one Robert Gendron acquired ownership of a printing press described as a 1976-Harris L-136-C. The machine was acquired for $17,500 from Heminway Corporation where the decedent had been employed, and it was the intent of the purchasers to clean and refurbish the machine and to sell it at a profit.
Despite productive efforts of Young and Gendron to restore the machine to marketable condition, which included painting by a private contractor, installation of new parts at a price of about $900, and advertising, attempts to sell were unsuccessful, in large part because of the owners' inability to devote sufficient time to sales efforts. In January 1991, after receiving few inquiries, the owners entered into an agreement with the defendant, HR, whose business, in part, was receiving printing machines on consignment and marketing the same for the owner. Pursuant to their agreement, which may be described as rather informal, the machine and its accessories were transported at the decedent's expense to the defendant's plant. There the defendant was expected to advertise in trade journals and to expend efforts to secure a buyer for the machine. Upon a sale the decedent agreed that the defendant would be entitled to a 15 percent commission plus certain costs and expenses incurred.
Testimony received from Mr. Gendron, which the court deems credible, disclosed that the owners authorized the defendant to sell the machine for $28,000. It was agreed that the defendant could incur some expense for maintenance and the making of repairs caused by damage during transportation to the defendant's plant. In that connection the evidence discloses (Pl. exh. G) that during the period late January to early February 1991, the defendant charged the owners for labor and materials provided at its plant. Additionally, Mr. Young paid an electrical contractor $449.56 for work done on the machine in May at the defendant's request.
Sometime in the spring or early summer of 1991 the defendant notified the owners of the defendant's receipt of offers to buy the machine in the $23,000 to $24,000 range. The offers, which were presumably in response to the defendant's advertisements, were rejected by the owners as being too low.
In August of the same year Mr. Young died, and, on October 9, 1991, the plaintiff was formally appointed executor of CT Page 11608 his estate. The evidence discloses (Pl. exh. B) that during that same month the defendant received notice of the appointment and the plaintiff's interest as executor in the printing machine as an asset of the decedent's estate.
Between November 5 and 14, 1991, the defendant performed work on the machine for which it charged the plaintiff, who had no prior notice of the work, $3,225. On November 26, 1991, the defendant, again without notice to the plaintiff, sold the machine to a Colorado dealer for $14,000. On December 6, 1991, the defendant assessed the plaintiff a further charge of $700 to prepare the machine for shipment to Colorado. In all, the defendant seeks to deduct $6,600.55 for costs and expenses incurred while the subject machine was in its possession.
James Pettit, a witness called by the plaintiff, also deemed to be credible, testified that he was printing superintendent for Heminway Corporation and very familiar with the printing machine throughout the years of its use by Heminway following its purchase in 1977. He testified that at the time of its sale to the decedent and Gendron the machine was mechanically sound and, after clean-up and refurbishment in which he participated, had a market value of $35,000.
Pettit further opined that the bulk of services and repairs during November-December 1991, as reflected in the defendant's accounting statement (Def. exh. 5), was unnecessary, consumed more time than should have been required, and was not what the decedent would have expected or approved.
Pursuant to its agreement with the decedent, the defendant, in addition to costs and expense reimbursement, seeks a commission of $2,100 (15 percent of $14,000). It professes its continuing willingness to pay the balance of $5,299.45 to the plaintiff in fulfillment of the agreement. The proposed payment, however, in full settlement of that which is owing is unacceptable to the plaintiff.
 II
The plaintiff has brought a complaint against HR which sounds in five counts: conversion, theft, breach of contract of consignment, breach of contract of sale, and violation of the Connecticut Unfair Trade Practices Act (Chap. 735a, Conn. Gen. Stat.). CT Page 11609
A. The plaintiff alleges in paragraphs 7 and 8 of its complaint that the defendant has converted the printing machine or the proceeds of its sale to the defendant's own use, refusing to return either the machine or proceeds due to the plaintiff.
 "Conversion is usually defined to be an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. Laverty v. Snethen, 68 N.Y. 522
(1877). It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm."
 Falker v. Samperi, 190 Conn. 412, 419-20
(1983).
The conduct of the defendant clearly falls within the purview of conversion as above defined. While the printing machine was in its possession, the defendant incurred unnecessary expenses for which it seeks to charge the plaintiff. The expenses were never authorized, nor is there a likelihood they would have been had the plaintiff received prior notice. More egregious, however, is the defendant's sale of the machine without notice to the plaintiff, although it was aware of the plaintiff's interest, at a price that was far below that contemplated by the parties in their agreement.
In acting as it did, especially following the death of the decedent Young, the defendant exercised dominion over the property, thereby assuming the power of the owner. As a result, the property rights of the plaintiff were dealt with adversely and to its detriment.
B. The plaintiff's complaint also charges the defendant with both a breach of a consignment contract and a breach of a contract of sale. As a practical matter, the two theories of recovery are closely similar: CT Page 11610
 "A consignment bears some resemblance to a sale or return and to a sale on approval. As in the former, the goods are delivered for the purpose of resale. As in the latter, unsold goods are expected to be returned to the consignor. In the case of a sale on approval, acceptance completes the transaction."
 International Looms Inc. v. Jono Textile Co., 34 Conn. Sup. 599, 601, cert. den. 172 Conn. 719 (1977).
Here, both the plaintiff's complaint (para. 4) and the defendant's answer thereto, as well as the evidence received (see Pl. exh. G, Def. exh. 5), demonstrate mutual acceptance of their relationship as parties to a consignment agreement. The printing machine was consigned to the defendant for the purpose of its resale at a price of $28,000. Upon a sale the defendant was to receive a commission of 15 percent. The court finds that the defendant by implication could incur and charge to the plaintiff reasonable expenses necessary to maintain the machine in working order while it was being offered for sale.
The court finds that the defendant breached the terms of its contract with the owners. At no time did the plaintiff or Gendron approve the terms of sale or authorize a sale of the machine for any sum less than $28,000. In making its finding, the court rejects testimony of HR's vice-president, Mr. Drevermann, that the decedent, not long before his death, instructed him to sell the machine, at the "best possible price." Apart from testimony regarding market value, the fact that the owners rejected offers as high as $24,000 only a few months prior leads the court to conclude that such testimony is not credible.
C. The court is not persuaded that the plaintiff has proven its claim of theft on the part of the defendant. Theft is defined as "the act of stealing; specif.: the felonious taking and removing of property with intent to deprive the rightful owner of it." Webster's Ninth New Collegiate Dictionary (1991). While the conduct of the defendant is vulnerable to critical review, particularly in withholding for an extended time notice of its sale, it cannot be said the machine was taken without authority or that the intent was a permanent deprivation of CT Page 11611 ownership rights. A fortiori, the evidence presented falls short of that required to award damages which the plaintiff seeks. Sec. 52-564, Conn. Gen. Stat; Schaffer v. Lindy, 8 Conn. App. 96,105 (1986).
D. It is also the court's finding that the plaintiff has failed to establish a violation of the Unfair Trade Practices Act; Sec. 42-110b, et seq., Conn. Gen. Stat., (CUTPA). "In order to prevail in a cause of action under CUTPA, the facts proved by the evidence must establish either `unfair methods of competition [or] unfair or deceptive acts or practices' which `have a potential effect on the general consuming public.'" McLaughlinFord, Inc. v. Ford Motor Co., 192 Conn. 558, 567 (1984). In other words, "a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy, " and proof of an intent to deceive is not required. Associated Investment Co. Ltd. Partnership v.Williams Associates IV, 230 Conn. 148, 156 (1994).
While the conduct of the defendant and its representatives is more than a little suspect, the court is not prepared to say that they acted with the degree of deception or in such a way as to violate public policy. Mr. Young's seemingly unexpected death while the machine was still being offered for sale; the concomitant delay in the plaintiff's appointment as executor; what the court interprets as a reluctance or unwillingness on the part of the co-owner Gendron to take a more active role in supervising or being more cognizant of progress made toward effecting a sale; and what was testimonially represented by Mr. Drevermann as a depressed vendor's market in the case of used printing presses such as the subject; all contributed, in the view of the court, to a wrongful result from the plaintiff's standpoint, but not a result which rises to the level of a CUTPA violation despite the Act's [Sec. 42-110b(d)] liberal construction. Sportmen's Boating Corporation v. Hensley,192 Conn. 747, 756 (1984).
 III
"The measure of damages for conversion . . . is the value of the property at the time of its conversion or loss, with interest from that time . . . ." Griffin v. Nationwide Moving Storage Co., 187 Conn. 405, 419 (1982). Value, as here, may be fixed by the terms of contract (Id.); and, similarly, the measure of damages for a breach thereof is the contract price itself. CT Page 11612Kunian v. Development Corporation of America, 165 Conn. 300, 315
(1973).
For the reasons hereinabove set forth, the gross amount of the plaintiff's damages is $28,000. Had the defendant complied with the terms of the consignment agreement, it would have been entitled to a commission of $4,200. The court finds that the costs incurred by the defendant and the charges it assessed during January and February 1991, as described in HR's accounting statement (Def. exh. 5), were justified in order to assure that the machine was in working order and marketable condition. The total thereof is $2,645.55, and this amount may be charged to the plaintiff. The balance of charges and claimed expenses for the November-December 1991 period was neither authorized nor necessary, and no allowance is made. Accordingly, judgment may enter in favor of the plaintiff[1] to recover of the defendant damages of $21,154.45 plus interest as provided by law.
Gaffney, J.