CARGILL, INC. *v.* STORMS AGRI ENTERPRISES, INC.

CA 93-696                                    878 S.W.2d 786

Court of Appeals of Arkansas
En Banc
Opinion delivered July 6, 1994

---

*Mashburn & Taylor*, by: *Timothy L. Brooks*, for appellant.

*Everett, Mars & Stills*, by: *David D. Stills* and *John C. Everett*, for appellee.

JOHN E. JENNINGS, Chief Judge. Appellant, Cargill, Inc., sued appellee, Storms Agri Enterprises, Inc., for repudiating a contract to purchase cottonseed from appellant and sought $12,012.00 in damages. At the conclusion of appellant's case, the trial court granted appellee's motion for directed verdict, holding that appellant had failed to produce any evidence that appellee's repudiation of the contract had substantially impaired the value of the contract to appellant as required by Ark. Code Ann. § 4-2-610 (Repl. 1991). On appeal, appellant contends the trial court erred in directing a verdict for appellee and dismissing its claim for damages.

Appellant is a seller of cottonseed, a by-product of the cotton-ginning process, that is used as a component in the feed ration of dairy cattle. Appellee operates a dairy farm and for the past few years has purchased cottonseed from appellant. At trial, appellant contended that on November 14, 1990, appellee's president, Bill Storms, verbally agreed to purchase from appellant

seventeen truckloads of cottonseed at the rate of $176.00 per ton to be delivered to appellee's farm. In support of its claim, appellant introduced into evidence Contract No. 5053, which recited the terms for appellee's purchase of seventeen truckloads, each containing approximately 400 short tons of cottonseed, at $176.00 per ton. Under the terms of this contract, appellee had the option of accepting delivery of the cottonseed at any time from the date the contract was made until August 1991.

Appellant's agent, John Fricke, testified that he received no objection concerning the contract from appellee and that appellee ordered three separate truckloads for delivery and paid for these truckloads pursuant to the terms stated in the contract. He testified that, in January 1991, he was informed that appellee had not signed and returned a copy of Contract No. 5053 as requested and that he contacted Bill Storms, who stated he had not received the contract and asked for another copy. Fricke stated that he then mailed him two more copies of the contract, which were not returned. He stated that, on February 25, Storms called him, told him that he had been quoted a price of $143.00 per ton for cottonseed, and wanted to know what appellant was going to do for him. Fricke stated he advised Storms that he could work something out but he would first have to have the signed contract returned. He testified that Storms then told him to deliver another truckload of cottonseed to appellee and he would decide whether he was going to sign the contract but that Storms canceled the delivery of cottonseed later that same day. Fricke testified that appellee's cancellation of the delivery alerted him that there could be a problem with appellee's future performance under the contract and that, on March 20, he sent appellee a letter stating the terms and conditions of the contract and advising him of the cash price of the contract if appellee canceled it. The letter concluded with a request that appellee advise appellant of its intentions for the balance of the contract by March 26, 1991. Fricke stated that appellee did not respond to his letter and that, on April 11, 1991, appellant's legal department sent appellee a letter by certified mail, which stated:

> You have received three loads under the contract with Cargill and a balance of 14 loads remain open on the contract. Because of previous communications with you indicating a possibility of breach on your part and because you

have not replied to Mr. Fricke's letter by the March 26 deadline, Cargill is treating the contract as breached and is demanding payment from you in the amount of $12,012.00, which is the difference between the contract price of $176.00 per ton plus $6.00 carrying charges and the current market of $143.00 per ton.

Fricke testified that appellant then canceled appellee's contract effective March 20 and computed the damages owed by appellee by taking the difference between the contract price of $176.00 per ton and the market price to which Storms testified of $143.00 per ton times the remaining fourteen undelivered truckloads, at twenty-two tons per truck, and then adding the accrued storage fees for January, February, and March 1991.

Bill Storms, president of appellee, was also called as a witness by appellant. Although he did not admit that he had entered into a contract to purchase seventeen loads of cottonseed from appellant, he did admit he bought three loads from appellant for the same charges and terms as shown on Contract No. 5053. He also admitted receiving a registered letter from appellant and that he did not respond to this letter. He also stated that he had decided by the end of February 1991 that he was not going to order any more cottonseed from appellant.

At the conclusion of appellant's case, appellee moved for a directed verdict, contending appellant had not produced any evidence that appellee's repudiation of the contract "substantially impaired" the value of the contract to appellant as required by Ark. Code Ann. § 4-2-610 (Repl. 1991). Although the trial court found there was evidence of repudiation by appellee, the court held that appellant was still required to prove that appellee's repudiation substantially impaired the value of appellant's contract and that appellant had failed to present any evidence in support of this issue. On this basis, the trial court directed a verdict for appellee.

For its first point on appeal, appellant contends the trial court erred in holding appellant had failed to introduce evidence of substantial impairment in accordance with § 4-2-610 and directing a verdict for appellee. In deciding whether a directed verdict should have been granted, we must view the evidence in

the light most favorable to the party against whom the verdict is sought and give it its highest probative value, taking into consideration all reasonable inferences deducible from it. *Howard* v. *Hicks*, 304 Ark. 112, 800 S.W.2d 706 (1990). Where the evidence is such that fair-minded people might reach different conclusions, then a jury question is presented, and it is error to grant a directed verdict. *Mankey* v. *Wal-Mart Stores, Inc.*, 314 Ark. 14, 16, 858 S.W.2d 85, 86 (1993).

In awarding appellee a directed verdict, the circuit court relied on Ark. Code Ann. § 4-2-610 (Repl. 1991), which provides:

> When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may:
>
> (a) For a commercially reasonable time await performance by the repudiating party; or
>
> (b) Resort to any remedy for breach (§ 4-2-703 or § 4-2-711), even though he has notified the repudiating party that he would await the latter's performance and has urged retraction; and
>
> (c) In either case suspend his own performance or proceed in accordance with the provisions of this chapter on the seller's right to identify goods to the contract notwithstanding breach or to salvage unfinished goods (§ 4-2-704).

The trial court interpreted the phrase "substantially impair" in this section to require that appellant must show some "special circumstances . . . that it's going to cause special damage" in order to sustain a claim for anticipatory breach. Although we do not agree that such a showing was required under the facts of this case, we understand the trial court's confusion, as the Uniform Commercial Code does not provide a useful definition of the phrase "substantially impair the value of the contract."

Comment 3 to § 2-610 of the Uniform Commercial Code states:

> The test chosen to justify an aggrieved party's action under this section is the same as that in the section on breach in installment contracts [U.C.C. 2-612] — namely the substantial value of the contract. The most useful test of substantial value is to determine whether material inconvenience or injustice will result if the aggrieved party is forced to wait and receive an ultimate tender minus the *part* or *aspect* repudiated. [Emphasis added.]

Arkansas Code Annotated § 4-2-612(3) provides that whenever non-conformity or default with respect to one or more installments substantially impairs the value of the whole contract, there is a breach of the whole. Comment 4 to § 2-612 of the Uniform Commercial Code [Ark. Code Ann. § 4-2-612 (Repl. 1991)] states that substantial impairment must be judged in terms of the normal or specifically known purposes of the contract.

■  The phrase "substantially impair" as used in § 4-2-610 requires the factfinder to look at the materiality of a party's repudiation as it relates to the entire contract. When a party repudiates as to a single installment or performance, it is incumbent on the party seeking damages under § 4-2-610 to prove the value of the contract as a whole was substantially impaired to justify his resort to his remedies for breach. *See* § 4-2-610(b). The determination of whether such a partial breach substantially impaired the value of the contract would be a question for the trier of fact. *See Cherwell-Ralli, Inc.* v. *Rytman Grain Co.*, 180 Conn. 714, 433 A.2d 984 (1980); *USX Corp.* v. *Union Pacific Resources Co.*, 753 S.W.2d 845 (Tex. Ct. App. 1988).

■  In the case at bar, however, it cannot be seriously argued that appellee's repudiation of fourteen out of seventeen loads of cottonseed that it allegedly agreed to purchase did not substantially affect the value of the whole contract, and appellant should have been allowed to present its claim to the jury. The essential point is that the evidence here shows a breach of the whole contract, not just a part. Where a buyer's conduct is sufficiently egregious, such conduct will, in and of itself, constitute substantial impairment of the value of the whole contract. *See S & S, Inc.* v. *Meyer*, 478 N.W.2d 857, 863 (Iowa Ct. App. 1991); *Cherwell-Ralli, Inc.* v. *Rytman Grain Co.*, 433 A.2d at 987. *See also Capital Steel Co.* v. *Foster and Creighton Co.*, 264 Ark.

683, 689-90, 574 S.W.2d 256, 259-60 (1978) (Remedies provided by the Uniform Commercial Code are to be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed.)

Because we must reverse on appellant's first point, we need not address the other issues raised.

Reversed and remanded.

COOPER, J., dissents.

JAMES R. COOPER, Judge, dissenting. I do not agree with the majority's conclusion that the trial judge erred in finding no evidence that the appellee's repudiation substantially impaired the value of the contract. I submit that, in order to show that the value of the contract had been impaired, the appellant was required to show not only the difference between the market price at the time and place for tender and the unpaid contract price, but also the amount of "expenses saved in consequence of the buyer's breach" as required by Ark. Code Ann. § 4-2-708(1) (Repl. 1991). This the appellant failed to do, and I believe that the trial court was therefore correct in granting the directed verdict motion.

Moreover, the case of *Capital Steel Co.* v. *Foster & Creighton Co.*, 264 Ark. 683, 574 S.W.2d 256 (1978), cited by the majority for the proposition that a mere showing of lost profits constitutes an adequate basis for a finding of substantial impairment of the contracts value, is inapplicable to the facts of the present case. In *Capital Steel, supra*, the Court held that a showing of lost profits was sufficient to present an issue for the jury with regard to damages. However, that holding was based squarely on the fact that Ark. Code Ann. § 4-2-708(1) was not applicable because the steel which was to be sold was not in existence at the time of the repudiation, so that the Court was required to "turn to subsection (2), which governs when subsection (1) is not applicable."

In the case at bar, there was no showing that the measure of damages in subsection (1) was inadequate; therefore, there is no occasion to apply the "lost profits" provision of subsection (2), as the majority has done in the case at bar. Because the showing of expenses saved on account of the breach, required by sub-

section (1), was not adequately made, and because subsection (2) was not applicable, I think the trial court correctly granted the appellee's motion for directed verdict.

I respectfully dissent.