STUTTGART REGIONAL MEDICAL CENTER *v.*
John P. COX, James Shane Jones, Walter T. Cox,
and State Farm Insurance Co., Inc.

00-579                                         33 S.W.3d 142

Supreme Court of Arkansas
Opinion delivered December 14, 2000

*Maxie G. Kizer, P.A.*, for appellant.

*Ludwig Law Firm PLC*, by: *Gene A. Ludwig*, for appellees.

ROBERT L. BROWN, Justice. Appellant Stuttgart Regional Medical Center (hereinafter the Hospital) appeals from a judgment denying it the sum of $31,540.74 for medical services rendered to appellee John P. Cox as well as attorney's fees and costs in the amount of $2,692.25. The Hospital further appeals from a denial of the enforcement of its medical lien in the same amount. We agree that the Hospital did have a valid, enforceable medical lien, and we reverse and remand.

The facts are that late at night on March 13, 1998, John P. Cox was a passenger in an automobile which was involved in an accident. The car was driven by appellee James Shane Jones, who apparently was at fault.[1] Cox suffered a concussion with a coma, a lung contusion, an open back wound, and kidney damage. He received medical services from the Hospital on March 13 through March 20, 1998, and again on March 22, 1998.

At the time his treatment began on March 13, 1998, Cox's mother signed a hospital form entitled "General Conditions of Admission and Consent," and his father, Walter T. Cox, signed another form dated March 25, 1998 entitled "Stuttgart Regional Medical Center Payment Policy." The General Conditions form included the following provision, entitled "Assignment of Insurance Benefits":

> I hereby assign to the hospital, physicians participating in my case and other licensed providers any and all rights and benefits to which I may be entitled arising out of any healthcare or liability insurance policy, Medicare or Medicaid. I hold the hospital harmless for any reduction in healthcare benefits by my insurance company resulting from noncompliance with any clause or condition contained in my policy which may require: Notification; Precertification; Prior or Retrospective Authorization; or Utilization Review of the medical service I receive. I am financially responsible for deductibles and co-insurance not covered by my policy.

---

[1] According to the Hospital's trial brief, Cox was injured by a third party, namely James Shane Jones. According to Cox's brief in response to the Hospital's trial brief, liability benefits have already been paid by the tortfeasor's insurance carrier.

The Payment Policy form included this statement:

> Assignment of insurance benefits and authorization to release information. For valuable consideration, I/We hereby authorize payment directly to Stuttgart Regional Medical Center of the hospital benefits as set forth by the policy above and otherwise payable to me, but not to exceed the regular charges for this period of hospitalization. I understand that I am financially responsible for charges not covered by this assignment. I further direct my insurance company to forward their check directly to Stuttgart Regional Medical Center. I hereby authorize Stuttgart Regional Medical Center to release the information requested on this form, for insurance purposes.

On April 2, 1998, the Hospital filed a notice of medical lien with the Arkansas County Clerk pursuant to the Medical Nursing Hospital and Ambulance Service Lien Act (Medical Lien Act), Ark. Code Ann. §§ 18-46-101 through 18-46-117 (Supp. 1999), seeking the amount of $31,540.74 for medical services rendered to Cox. The notice was sent to John P. Cox, who was insured under a policy carried by his father, Walter T. Cox, with State Farm Insurance Company, Inc. At issue were two payments from State Farm Insurance: (1) a payment of $5,000 for medical benefits, and (2) a payment of $25,000 for underinsured motorist coverage. On September 29, 1998, the Hospital sued to enforce its medical lien and named John P. Cox, James Shane Jones, and State Farm Insurance Co., Inc., as parties defendant.[2]

State Farm answered and sought dismissal of the complaint under Arkansas Rule of Civil Procedure 12(b)(6). State Farm further counterclaimed for interpleader against the Hospital and stated that it had tendered checks to Cox and the Hospital in the amounts of $5,000 and $25,000, which represented policy limits, and that Cox had failed to complete the agreed-upon settlement. State Farm also cross-claimed for interpleader against Cox and prayed for enforcement of their settlement. The circuit court subsequently ordered that the funds representing the insurance proceeds be paid into the Registry of the Court.

---

[2] In subsequent amended complaints, the Hospital corrected the name of the insurance carrier to State Farm Mutual Automobile Insurance Company and added Walter T. Cox as a defendant.

A bench trial ensued at which Cox argued that the Hospital was not entitled to the underinsurance benefits ($25,000). He further argued that he did not have any personal financial liability, until the Hospital had first filed claims with a health insurance provider for Cox's father, CHAMPUS. The Hospital, on the other hand, contended that it had no legal requirement to file with CHAMPUS because it was not the primary insurance carrier. After the trial, the trial court entered a one-sentence order in which it said: "The Court hereby finds for the Defendants, John P. Cox, et al."

■ ■ In the Hospital's two points raised in this appeal, it contends that (1) it was entitled to the value of medical services provided plus attorney's fees, and (2) that it was entitled to enforcement of its medical lien to collect those amounts. Our standard of review for bench trials is whether the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a). *See also Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998). This court reviews the evidence in the light most favorable to the appellee and resolves all inferences in favor of the appellee. *See Ford Motor Credit Co. v. Ellison, supra.* Disputed facts and determinations of the credibility of witnesses are within the province of the factfinder. *See id.*

■ The pertinent section of the Medical Lien Act reads as follows:

> On compliance with the requirements of this chapter, a practitioner, a nurse, a hospital, and an ambulance service provider shall each have a lien:
>
> (1) For the value of the service rendered and to be rendered by the practitioner, nurse, hospital, or ambulance service provider to a patient, at the express or implied request of that patient or of someone acting on his behalf, for the relief and cure of an injury suffered through the fault or neglect of someone other than the patient himself;
>
> (2) On any claim, right of action, and money to which the patient is entitled because of that injury, and to costs and attorneys' fees incurred in enforcing that lien.

Ark. Code Ann. § 18-46-104 (Supp. 1999). In *Fort Smith Serv. Fin. Corp. v. Parrish*, 302 Ark. 299, 789 S.W.2d 723 (1990), this court

stated that the Medical Lien Act should be liberally construed to effectuate its purpose.

It is axiomatic that when a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999); *Kildow v. Baldwin Piano & Organ*, 333 Ark. 335, 969 S.W.2d 190 (1998). In the case at hand, we conclude that the language of § 18-46-104 is clear and unambiguous. The language of subsection 2 specifically states that the provider of "any claim, right of action, and money to which the patient is entitled because of that injury" shall have a lien. Section 18-46-102(2) of the Medical Lien Act defines "claims" as "the claim of a patient: (A) [f]or damages from a tortfeasor; or (B) [f]or benefits from an insurer[.]" The term "any" preceding "claim, right of action, and money" is plain and unambiguous. John P. Cox received insurance benefits from his father's auto insurer, State Farm: $25,000 for underinsured motorist-bodily injury coverage, and $5000 for medical benefits. Both payments were to be made as the result of Cox's settlement with State Farm. In our judgment, these funds fall squarely within the language of § 18-46-104, when it speaks in terms of "claim, right of action, and money," and the Hospital was unquestionably entitled to the funds because of the injuries Cox suffered through the fault or negligence of someone else. This is particularly true under our standard of liberal construction of the Medical Lien Act. *See Fort Smith Serv. Fin. Corp. v. Parrish, supra.*

Cox argues vigorously to this Court, as he did to the circuit court, that the Hospital was required to attempt collection of insurance benefits first from Cox's medical insurer, CHAMPUS, and that this was a "condition precedent" to the enforcement of any lien. According to Cox, the Hospital's cause of action is based on the two agreements which Cox's parents signed when he was admitted to the Hospital. We disagree, however, that the Hospital's cause of action sounded in contract and was premised on the two Hospital agreements signed by Cox's parents. Reading the Hospital's complaint, there can be no doubt that the sole cause of action was to enforce its lien.

In addition, we disagree that the two agreements placed an obligation on the Hospital to collect against any particular insurer in any particular order. In *Robinson v. City of Pine Bluff*, 224

Ark. 791, 276 S.W.2d 419 (1955), this Court recognized that "[a]n assignment is an expression of intention by assignor that his rights shall pass to the assignee." *Robinson*, 224 Ark. at 794, 276 S.W.2d at 421 (quoting *Brewer v. Harris*, 147 Kan. 197, 75 P.2d 287; 4 *Words and Phrases* 493). This Court defined "assignment" as "the setting over, or transferring, the interest a man hath in anything to another." *See id.*, 276 S.W.2d at 421 (quoting *Edison, et al. v. Frazier*, 9 Ark. 219). The two agreements which were executed by Cox's mother and father assigned over Cox's rights and benefits under any healthcare, liability, or car insurance policies he might possess. But neither assignment imposed any duty on the Hospital to file with any particular insurance, much less in any order of priority. Both assignments merely granted the Hospital the right to any benefits available and guaranteed that the assignor would be liable for any remaining debts due. In short, neither assignment precludes the Hospital from enforcing its lien against the underinsured motorist proceeds.

■ Because the finding of the circuit court is clearly at odds with the Medical Lien Act, we reverse the circuit court's order and remand for entry of an order consistent with this opinion. We recognize that because of its first order denying a lien to the Hospital, the circuit court has not considered an award of attorney's fees and costs. On remand, appropriate attorney's fees and costs shall be awarded in accordance with § 18-46-104(2).

Reversed and remanded.