QUINN-MATCHET PARTNERS, INC. *v.*
PARKER CORPORATION, INC., and
E. Richard Parker, Jr., *Individually*

CA 03–458 147 S.W.3d 703

Court of Appeals of Arkansas
Division I
Opinion delivered February 18, 2004

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Lance R. Miller* and *Derrick W. Smith*, for appellant.

*Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd.*, by: *Randy L. Grice* and *Chris R. Hart*, for appellees.

JOSEPHINE LINKER HART, Judge. This appeal involves an action for damages for breach of a commercial lease. The issue is whether the sole shareholder of the tenant corporation is personally liable, either under a personal guaranty of the lease or by piercing the corporate veil, for the damages caused by his corporation's breach of the lease. The trial judge found that the shareholder was not liable under either basis. We find no error and affirm.

In October 1993, appellant Quinn-Matchet Partners, Inc., signed a commercial lease with appellee Parker Corporation. Appellee Richard Parker, the sole shareholder in Parker Corporation, personally guaranteed the lease. The lease contained the following provisions:

### Article 22. DEFAULTS BY TENANT

A. The occurrence of any of the following shall constitute a material default and breach of this Lease by Tenant.

(i) Any failure by Tenant to pay Rent or make any other payment required to be made by Tenant hereunder within ten (10) days after receipt of written notice from Landlord.

(ii) A failure by Tenant to observe and perform any other material provision of this Lease to be observed or performed by the Tenant, where such failure continues for twenty (20) days after written notice thereof by Landlord to Tenant, except that this twenty (20) day period shall be extended for a reasonable period of time if the alleged default is not reasonably capable of cure within said twenty (20) day period and Tenant proceeds to diligently cure the default.

....

### Article 60. PERSONAL GUARANTEE

E. Richard Parker, Jr., agrees to Personally Guarantee the Lease for a period of three (3) years from the Commencement Date. Provided the Tenant is not in default on any of the terms and condition of the Lease Agreement, the Personal Guarantee shall be released.

Appellant filed a complaint in unlawful detainer on February 29, 2000, alleging that the corporation had failed to make the monthly rental payments since February 1998 and had failed to

surrender possession. The complaint also alleged that the appellee corporation's charter had been revoked as of December 31, 1999, and, therefore Parker, as the sole shareholder of a defunct corporation, was personally liable for the debts of the corporation. After appellees voluntarily surrendered possession, appellant amended its complaint to allege that Parker was personally liable for the corporate debts because he used the corporation as his alter ego and that he had disregarded the corporate formalities.

Richard Parker testified that he was the sole shareholder, officer, and director of Parker Corporation. He admitted that he signed a lease with appellant on behalf of the corporation as president as well as giving his personal guaranty. He testified that he understood Article 60 of the lease to mean that if, at the end of the three-year period, the corporation was current in its obligations under the lease, the personal guaranty would be released but that , if the corporation was not current at that time, the personal guaranty would remain in force. He denied that the corporation was in default at the end of the three-year period, October 1996, and stated his belief that all payments due appellant had been made.

Parker admitted to documented instances, including several between March 1995 and June 1996, when the corporation was notified that it had failed to make payments due under the lease such as rent, real estate taxes, insurance premiums, and late fees. He stated that the corporation vacated the premises in February 2000 but had not made any payments since that time.

Parker stated that he made a stockholder loan to the corporation in the amount of $100,000, which he said was the amount required to obtain Small Business Administration (SBA) financing. He admitted that there was no note evidencing the terms of the loan such as due date, interest rate, or other repayment terms, and that the loan had been repaid while other creditors had not been paid.

Parker identified several of the corporation's corporate checks payable to him personally totaling over $31,500, some of which were made while the corporation was not paying its obligations to other creditors. He also admitted that, pursuant to the advice of an accountant, the corporation made the lease payments on a vehicle titled in his individual name but stated that the vehicle was used for business purposes. He also testified that he was rarely paid a paycheck and that the money he received from the corporation was in repayment of the loan. He said that this was

also done on the accountant's advice. Parker also testified that corporate records showed that the corporation made a loan to him of approximately $98,000.

Parker testified that no corporate meetings were held because he did not realize that he was required to hold corporate meetings if he was the only shareholder. He also testified that, although the corporation sometimes kept corporate minutes, he realized that he was equating corporate resolutions with corporate minutes. He also testified that the corporation maintained separate bank accounts and that the corporate account was not used to pay his personal expenses such as mortgage or utility payments. He said that separate corporate tax returns were filed and that other financial records were kept for the corporation.

Walter Quinn, appellant's managing director, testified that appellant, a real estate development and management company, agreed to build and lease a store to Parker Corporation for operation as a video store. He stated that he insisted on Parker's personal guaranty before agreeing to the lease because it was a start-up business. Quinn stated that the corporation was consistently in default during the three-year guaranty period, including at the end of that period. He explained that the corporation was late with the rent or made only partial payments. He also stated that appellant sometimes paid the real-estate taxes or insurance premiums in order to protect its investment.

Quinn testified that appellant was able to relet the premises but for a reduced rental. He admitted that an exhibit showed that Parker Corporation did not owe any money sought in the suit prior to February 1998. He also admitted that, prior to 1998, appellant did not exercise any of its rights under the lease's default provisions. He also admitted that all of the payments appellant received under the lease were drawn on the corporation's account and not Parker's individual account.

After a bench trial, the trial court noted that there was no dispute as to the appellee corporation's liability for breach of the lease and awarded judgment in the amount of $58,095.39. As to the personal guaranty, the trial court found that, although Parker Corporation experienced financial difficulties as early as 1994, the corporation was current in its obligations as of October 1996; that appellant never exercised its option to declare Parker Corporation in default during the three-year guaranty period; that there was no default prior to October 1996; and that Parker's personal guaranty was released.

As to piercing the corporate veil, the trial court found that Parker did not operate the corporation as his alter ego and, therefore, was not personally liable on the lease agreement. The trial court noted that, although the corporation did not hold shareholder or director meetings and did not maintain a corporate record book, the corporation conducted business as a separate entity. The trial court found that the corporation had articles of incorporation and stock certificates; that the corporation executed formal corporate resolutions when required; and that the corporation maintained separate checking accounts and filed separate tax returns. The trial court noted that the only evidence that Parker operated the corporation as his alter ego was that Parker was paid some $30,000 between July 1998 and December 1999, and that the corporation made the payments on a vehicle titled in Parker's name. The trial court also noted that the corporation's accountant advised Parker to take the money as repayment of a loan made to the corporation, and that the vehicle was used for business purposes. This appeal followed.

Appellant raises one point on appeal, that the trial court erred in not finding Richard Parker personally liable for the damages caused by Parker Corporation's breach of its lease. Appellant divides the point into two parts. In the first part, appellant argues that the trial court erred in failing to pierce the corporate veil so as to hold Parker personally liable. In the second part, appellant argues that Parker is liable under the personal guaranty he signed.

Our standard of review for bench trials is whether the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a); *Stuttgart Reg'l Med. Ctr. v. Cox*, 343 Ark. 209, 33 S.W.3d 142 (2000). This court reviews the evidence in the light most favorable to the appellee and resolves all inferences in favor of the appellee. *See Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998). Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Id.*

In the first part of its argument, appellant argues that the trial court erred in not piercing the corporate veil because, according to appellant, Parker failed to observe corporate formalities in form and in substance. It is a nearly universal rule that a corporation and its stockholders are separate and distinct entities, even though a stockholder may own the majority of the stock. *First*

*Commercial Bank v. Walker*, 333 Ark. 100, 969 S.W.2d 146 (1998). In special circumstances, the court will disregard the corporate facade when the corporate form has been illegally abused to the injury of a third party. *Enviroclean, Inc. v. Arkansas Pollution Control & Ecology Comm'n*, 314 Ark. 98, 858 S.W.2d 116 (1993); *Don G. Parker, Inc. v. Point Ferry, Inc.*, 249 Ark. 764, 461 S.W.2d 587 (1971). The conditions under which the corporate entity may be disregarded or looked upon as the alter ego of the principal stockholder vary according to the circumstances of each case. *Winchel v. Craig*, 55 Ark. App. 373, 934 S.W.2d 946 (1996). The doctrine of piercing the corporate veil is founded in equity and is applied when the facts warrant its application to prevent an injustice. *Humphries v. Bray*, 271 Ark. 962, 611 S.W.2d 791 (Ark. App. 1981). Piercing the fiction of a corporate entity should be applied with great caution. *Banks v. Jones*, 239 Ark. 396, 390 S.W.2d 108 (1965); *Thomsen Family Trust v. Peterson Family Enters.*, 66 Ark. App. 294, 989 S.W.2d 934 (1999). The issue of whether the corporate entity has been fraudulently abused is a question for the trier of fact, and the one seeking to pierce the corporate veil and disregard the corporate entity has the burden of proving that the corporate form was abused to his injury. *See National Bank of Commerce v. HCA Health Servs. of Midwest, Inc.*, 304 Ark. 55, 800 S.W.2d 694 (1990).

 Considering the facts of the present case in light of these principles, we do not find that the trial judge clearly erred in finding that the corporate entity was not fraudulently abused. First, the trial court found no proof in the record to support a conclusion that Parker abused the corporate form for illegitimate purposes. Appellant argues that it presented such proof by showing evidence concerning the repayment of loans to Parker while the corporation's other creditors were not being paid and by showing the payments made by the corporation for the vehicle titled in Parker's individual name. However, appellant presented no evidence that these were not legitimate business expenses. Because appellant was the party seeking to pierce the corporate veil, it was appellant's burden to do so. *National Bank of Commerce v. HCA Health Servs. of Midwest, Inc., supra*; *Rhodes v. Veith*, 80 Ark. App. 362, 96 S.W.3d 734 (2003). The trial court could reasonably conclude that appellant failed to meet that burden. Second, the trial court also found that the corporation adhered to corporate formalities by keeping its own financial records and bank accounts, by filing separate tax

returns, and by recording the loans made between it and Parker. Appellant argues that fairness demands that the corporate veil be pierced because the factors found to support piercing the corporate veil in *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923 (8th Cir. 1999), and *Humphries v. Bray, supra*, are present in this case in that the corporation failed to conduct annual meetings, repaid Parker while other creditors went unpaid, and paid for a vehicle titled in Parker personally. However, the problem with appellant's argument is that the trial court did not accept appellant's explanation of the evidence, and the weight and value of the evidence lies within the exclusive province of the trier of fact. *Garrett v. Brown*, 319 Ark. 662, 893 S.W.2d 784 (1995); *Winchel v. Craig, supra*. Further, appellant waited more than four years after becoming aware of the corporation's defaults and two years after the last payment before filing suit. Such a delay militates against a finding of injustice. *See, e.g., Padgett v. Haston*, 279 Ark. 367, 651 S.W.2d 460 (1983).

■ In the second part of its argument, appellant argues that the corporation was in default in 1994, 1995, and 1996 and, therefore, that Parker's personal guaranty remained in place. However, the trial court found that the corporation was not in default prior to October 1996, and we cannot say that this finding is clearly erroneous.

Affirmed.

CRABTREE and ROAF, JJ., agree.